Booth, Chief Justice,
delivered the opinion of the court:
This is a Dent Act case. The plaintiff is the receiver of the Compac Tent Company, an Indiana corporation. During the war the corporation entered into four contracts to manufacture from material furnished by the Government a specified number of wall-tent flies. Taking the record as it is, the transactions involved were consummated in the following manner: Proposals were solicited by the Government for supplying the needed tent flies, the corporation to do the work, furnish some minor essentials, and the Government to furnish all the material. The corporation submitted its proposals, the acceptance of which ,is evidenced by one proxy-signed formal contract and four written purchase orders. The Government furnished and the corporation had in its possession a large quantity of material with which to perform its contracts. Some of this material had been converted into wall-tent flies and the quantity with *745 which th,is suit is concerned had not been so converted. On the night of January 13, 1918, the corporation’s plant, through no fault of the corporation, was totally destroyed by fire. The corporation’s loss was a total one, both plant and contents being consumed. Immediately after the fire the corporation obtained quarters and was proceeding to set up machinery and an organization to continue its performance of the contract, when, on January 19, 1918, the Government canceled the contract, assigning as a reason therefor its inability to replace the material destroyed and the further fact that the need for the tent flies had passed, the Government having on hand a sufficient supply., A short time subsequent to the fire the Government required the corporation to account for the material destroyed and pay therefor the sum of $34,265.04, the admitted value of the same. The corporation paid this sum on February 28, 1918, transmitting the same in a letter, as appears from Finding VIH. This sum constitutes one of the .items for which this suit is brought.
The corporation had completed and was ready to deliver 1,000 tent flies, for which it was to receive $3,740.00 prior to January 10, 1918. The record sustains the fact that on or about January 10, 1918, the corporation was requested by an agent of the defendant to withhold shipment of the completed tent flies, and make arrangements to store them for. the Government. On January 16, 1918, the official character of the agent’s visit, as well as the purpose of it, was confirmed by a telegram from the depot quartermaster at Jeffersonville, Indiana, .inquiring as to the corporation’s available storage space to store the flies and the cost thereof. All of the completed flies were destroyed in the fire, involving a loss, of $3,740.00, the cost of making the same, and $21,365.47 worth of material. The corporation also includes this item in this suit. Several additional items are included for wh,ich recovery is asked in the petition. One in particular is a claim for overhead and monetary outlay predicated upon an alleged breach of the contracts, the corporation contending that the termination of the contract constituted a breach of the agreement, rather than a *746 cancellation, there being no provision in the contracts for cancellation. We do not think the contention is sustained. While there exists some evidence of a feeble attempt to reserve rights in the letter of February 28, 1918, nevertheless it is manifest that at the time the letter was written the corporation was in a state of indecision, and subsequent events seem to clearly disclose an acquiescence in what was done. In any event, the most that can be said as to protest is a counter proposition by the corporation that if future orders made up the loss no cla,im woujd be preferred for the same. While we think a claim did exist for expenditures incurred directly after the fire and up to date of cancellation, a claim which fails for lack of proof, we are convinced that the other claims in this respect are without merit.
The right to recover the item of $34,265.04 is rested upon a contention of the corporation’s common-law liability as a bailee of the materials destroyed. The argument advanced is predicated upon proof of absence of negligence upon the corporation’s part and the loss of the materials through inevitabje accident. The defendant contests the allowance, claiming an express contract, by the terms of which there was imposed upon the corporation an obligation of liability for the materials committed to its custody, irrespective of the cause of loss. Paragraph one of the written contract is closed with the following provision: “ Note: The contractor will be held liable for any loss of, or damage to, any of the materials furnished by the Quartermaster Corps, from any cause whatsoever, while in his possession.” This identical provision appears in each of the purchase orders preceding the signature of the contracting officer. The contractor insists that the phraseology of the note and its position in the written instruments amounts to no more nor less than a mere addendum reciting an intention to do the thing specified and the Government’s legal conclusion as to the corporation’s liability; that it is devoid of expressive words sufficient to create a contractual stipulation imposing upon the contractor the liability of an insurer. Finally, it is insisted that the provision is absolutely void as a modification of the original contract for lack of mutuality. Several *747 cases are cited to sustain tbe argument. So far as the present record is concerned, the court is informed that the corporation’s “ quotation is hereby accepted.” This appears in the purchase orders. From these words we infer that quotations were solicited. The contract was consummated by the transmission to the corporation of the purchase orders, i. e., it required the submission of the quotations and the acceptance by the way of express purchase orders to complete the contract.
Whether the corporation was advised previous to the transmission of the purchase orders that its common-law liability as a bailee was to be changed by express provisions to the contrary is not disclosed. There can be no doubt, however, that when the corporation received the purchase orders it was made fully aware of an emphasized purpose and intent on the part of the Government to'hold it liable as an insurer for the materials entrusted to its possession. Obviously, there then existed an opportunity for the corporation to disavow such a liability and refuse to go forward with the contract. Up to this point the corporation had incurred no liability of any character whatever. It had simply transmitted its offer. There remained before the contract came into being its acceptance, and if the Government qualified its acceptance and proposed conditions tending to increase liabilities and enhance the risk of the contractor beyond those contemplated in its proposal, the corporation was clearly under the necessity of indicating its dissent to the same, whatever may have been its conception of its rights and obligations in the first instance. If under these conditions the corporation proceeded to perform the contracts, received and accepted the materials sent to it, we see no escape from the conclusion that it assented to the terms of the purchase orders and was obligated thereby. No claim, we think, could be advanced of lack of mutuality under the proxy-signed contract. This contract was duly executed with the provision in it and no protest or evidence of dissent is shown. Much reliance is placed upon the case of Utley v. Donaldson, 24 L. Ed. 54, to sustain the right of recovery. In this case the Supreme Court was dealing with *748 a modification of a contract involving a sale consummated by an offer and acceptance, later modified by the vendor upon the delivery of the articles sold. The manifest difference between the cited and the instant case impresses us as residing in the fact that in this case there was no modification of a completed contract. On the contrary, before the proposals had been accepted the Government in express terms states the conditions upon which they are accepted, and without protest the contractor proceeded with the performance of the .contract.
The source from which mutuality is to be ascertained is the conduct of the parties in conjunction with whatever written documents obtain and from all the surrounding circumstances of the transaction. Here we have contracts by the terms of which the Government parts with possession of material of-great value, many times as valuable in dollars and cents as the consideration to be paid the contractors for doing the contract work. We must assume, in view of this situation, that the Government intended to protect its interests and that the clause in question was designed for that purpose. There is nothing unfair in doing so. No “ snare ” was laid to entrap the contractor. The provision was conspicuous and emphatic in both the formal contract and the purchase orders. The plaintiff corporation does not seek to plead ignorance of it and we think it was binding. We think the claim for $3,740.00, contract price of the tents, and $21,365.47, value of material going into the same, is recoverable. The .corporation had earned the compensation. The merchandise was ready to be delivered, and would have been delivered except for the instructions to withhold delivery and store the same. The 1,000 tent flies were wrapped in burlap ready for immediate delivery, and it is not contradicted that the officer directing their storage did not even inspect the same, but ordered a delay in delivery and storage of the same. The Board of Contract Adjustment recommended payment of this item in part. The Government challenges the sufficiency of the proof to sustain recovery. We think it preponderates in favor of recovery. The visit of the inspector, while his identity is not disclosed, is con *749 firmed by the telegram of the Government officer dispatched on January 17, 1918. The Government was evidently in need of storage capacity, and did not want immediate delivery; supplies were coming in which taxed the storage capacity of the depot quartermaster, and it is inconceivable that the corporation would have retained the tent flies unless requested so to do. The record clearly discloses that it was to the advantage of the Government to have the tent flies stored in the plant of the corporation, and that inasmuch as delivery was in the course of being made and the acts of the defendant precluded its consummation by reason of a pending contract for storage, we think judgment for the sum of $25,105.47 should be awarded. It is so ordered.
GkeeN, Judge; Moss, Judge; and GRAham, Judge, concur.